| | | |
|---|---|---|
| **RODNEY JONES,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **CARLTON B. JOYNER,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court upon Rodney Jones's amended pro se Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Also before the Court are Respondent's Motion for Summary Judgment (Doc. No. 5) and Petitioner's motions for an evidentiary hearing (Doc. No. 9) and for discovery (Doc. Nos. 10, 15).

## I.     BACKGROUND

Petitioner is a prisoner of the State of North Carolina, who, on March 13, 2012, was convicted after a jury trial in Mecklenburg County Superior Court of first-degree burglary and larceny after breaking and entering.[1] He subsequently admitted attaining habitual felon status. Judgement was consolidated for sentencing, and Petitioner was sentenced to 151-191 months imprisonment. The North Carolina Court of Appeals summarized the State's evidence:

> On the evening of 20 October 2008, Tracy Thompson was alone and asleep in her townhome on North Church Street in Charlotte, North Carolina. Before going to bed at around 9:30 p.m., Ms. Thompson had dead-bolted the front door and left the light on in the hallway outside her bedroom. After she had fallen asleep at about

_____

[1] Petitioner's first trial in May of 2011 ended in a hung jury.

10:00 p.m., Ms. Thompson was awakened by a pounding sound, but she fell back to sleep.

At around 10:30 p.m., Brandon Phillips was a passenger in an automobile parked on North Church Street. Mr. Phillips was talking to a coworker when he noticed two individuals, one wearing a black hoodie and the other wearing a gray hoodie, on the street. Thinking the pair looked suspicious, Mr. Phillips and his coworker sat back in the car and watched them. They saw the two individuals walk up to a townhouse, and the one wearing a gray hoodie, who was taller, kicked the door two or three times until the door came open. Both of the individuals ran into the townhouse.

Sometime after that, Ms. Thompson was awakened by a loud crash, a flash of light, and her bedroom door being flung open. She saw a thin black male in his forties wearing a light-colored hoodie and dark pants. Ms. Thompson could see the intruder's face because the hallway light illuminated his face and he was only three to five feet away from her. Ms. Thompson screamed, told the man she had a gun, and threatened to kill him. The intruder turned and walked back toward the hallway. Ms. Thompson then opened the window, kicked out the screen, screamed out the window for help, and called 911.

Still sitting outside, Mr. Phillips saw Ms. Thompson, heard her scream for help, and watched the two individuals run from her townhouse. The two ran down North Church Street toward Discovery Place with Mr. Phillips and his companion in their car following slowly behind them. Mr. Phillips called 911 while keeping the two intruders in sight. As the two individuals continued down Church Street, the man wearing the gray hoodie took off the hoodie. The two individuals then made a right turn onto 6th Street and crossed that street.

At that point, Officer Marvin Bell, an off-duty officer with the Charlotte–Mecklenburg Police Department, who had heard the call regarding the break-in and gone to the area, saw what he believed to be two men crossing 6th Street. Officer Bell was looking at their backs and could not see either person's face, although he believed them to be the two suspects based upon the descriptions of their clothing that had come over the radio. Officer Bell lost sight of the two as they turned a corner.

Officer Benjamin Roldan and another officer, who were responding to the breaking and entering call, saw two individuals matching the description of the suspects walk across 6th Street and detained them. At that point, Mr. Phillips identified the two people as the individuals who had broken into and fled from Ms. Thompson's townhouse. Mr. Phillips noted that the gray hoodie had disappeared sometime between the time the two intruders had turned the corner and the police had arrived. It turned out that the person wearing a black hoodie was female while the other

individual was male. Officer Roldan searched the two suspects and recovered a cell phone, charger, and digital camera.

Meanwhile, Ms. Thompson informed Officer Patrick Mulhall, who arrived at her home, that her cell phone was missing. Officer Mulhall called the cell phone's number, and Officer Roldan answered—the cell phone he had retrieved from the suspects was Ms. Thompson's phone.

Ms. Thompson was then taken to 6th and Poplar Streets where she saw two individuals standing in a parking lot. The area was well lit, and she was taken within 15 feet of the two suspects. She identified defendant as the person who had entered her bedroom. After identifying defendant, Ms. Thompson traveled with police down an alley through which the two suspects had traveled. Ms. Thompson noticed a light colored hoodie sweatshirt in a bush that looked like the one defendant was wearing when he kicked in her bedroom door.

. . . At trial, Ms. Thompson testified that she was 100 percent sure that defendant was the man who had broken into her townhouse and that she had not forgotten his face.

State v. Jones, 750 S.E.2d 920, 2013 WL 5231986 at *1-2 (N.C. Ct. App. Sept. 17, 2013).

The North Carolina Court of Appeals found no error on direct review. See id. at *7. It does not appear from the record or the amended Petition and its attachments that Petitioner sought further review in the North Carolina Supreme Court.

On or about April 7, 2014, Petitioner filed a pro se motion for appropriate relief ("MAR") in the Mecklenburg County Superior Court. (Resp't's Ex. 5, Doc. Nos. 6-6 & 6-7.) The state court summarily denied the MAR, stating that it "fail[ed] to show an entitlement to relief upon any of the grounds set forth in N.C.G.S. 15A-1415(b)." (Order Den. MAR, Resp't's Ex. 6, Doc. No. 6-8.) On or about June 9, 2014, Petitioner filed a pro se certiorari petition in the North Carolina Court of Appeals (Resp't's Ex. 7, Doc. No. 6-9), which was denied on June 17, 2014 (Order Den. Cert. Pet., Resp't's Ex. 9, Doc. No. 6-11.) On or about June 13, 2014, Petitioner filed a pro se MAR in the North Carolina Court of Appeals (Resp't's Ex. 10, Doc. No. 6-12), which was dismissed on July 2, 2014 (Order Den. MAR, Resp't's Ex. 11, Doc. No. 6-13.)

On July 31, 2014, Petitioner filed the instant habeas petition, with exhibits, in federal district court. (Doc. Nos. 1, 1-1, & 1-2.) On August 14, 2014, Petitioner filed an amendment to his Petition to add an equal protection claim. (Doc. No. 2.) After conducting an initial review required by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, this Court ordered Respondent to file a response to the amended Petition. Respondent filed a Response (Doc. No. 4) and a Motion for Summary Judgment (Doc. No. 5). Petitioner subsequently filed a response to the Motion for Summary Judgment (Doc. No. 11), a Memorandum of Support (Doc. No. 13), and an affidavit (Doc. No. 17). Additionally, he filed the instant motion for an evidentiary hearing (Doc. No. 9) and motions for discovery (Doc. Nos. 10. 15).

On October 22, 2014, Petitioner through counsel from N.C. Prisoner Legal Services Inc., filed an MAR in the Mecklenburg County Superior Court, raising a claim of ineffective assistance of trial counsel for stipulating to an incorrect prior record level at sentencing. (Resp't's Exhibit 12, Doc. No. 6-14.) On August 6, 2015, Respondent filed a notice in this Court that Petitioner, through counsel, had withdrawn the MAR. (Doc. No. 18.) These matters are now ripe for review.

## II.    STANDARD OF REVIEW

### A.  Summary Judgment

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp., 475 U.S. 574, 587–88 (1986).  Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

### B.  The Antiterrorism and Effective Death Penalty Act of 1996

Review of Petitioner's claims that were adjudicated on their merits by the state courts is limited by the deferential standard set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  § 2254(d), as construed by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 374-91 (2000).  This Court may grant habeas relief on claims of constitutional error adjudicated on their merits in state court only if that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

A decision is "contrary to" Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an opposite result]."  Williams, 529 U.S. at 405.  A state court unreasonably applies federal law when it "identifies the correct governing legal rule from th[e Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case."  Williams, 529 U.S. at 407.  A state court's determination that a claim fails on its merits cannot be overturned by a federal habeas court "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

Finally, where, as here, the state court has issued a summary denial of a prisoner's federal claims, it is presumed to be an adjudication on the merits for § 2254(d)(1) purposes. See Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); Bell v. Jarvis, 236 F.3d 149, 163 (4th Cir. 2000) (en banc) (reaffirming that a summary state court decision on the merits of a federal constitutional claim is an "adjudication" of the claim for purposes of § 2254(d)). Additionally, when the state court does not provide reasons for its dismissal of a petitioner's claim, the federal habeas court considers "'what arguments or theories . . . could have supported[ ] the state court's decision.'" Lynch v. Dolce, 789 F.3d 303, 311 (2d Cir. 2015) (quoting Richter, 562 U.S. at 102) (alteration in the original). However, "[w]here there has been one reasoned state judgment rejecting a federal claim," federal habeas courts presume that "later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

## III. DISCUSSION

### A. Petitioner's Motions for Evidentiary Hearing and Discovery

In Cullen v. Pinholster, the Supreme Court held that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." 131 S.Ct. 1388, 1400 (2011). In other words, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Id. at 1398. "Accordingly, district courts are precluded from conducting evidentiary hearings to supplement existing state court records when a state court has issued a decision on the merits with respect to the claim at issue." Ballinger v.

Prelesnik, 709 F.3d 558, 561 (6th Cir. 2013), cert. denied, 133 S.Ct. 2866 (2013) (citing Pinholster, 131 S.Ct. at 1400).

The North Carolina Court of Appeals and/or the Mecklenburg County Superior Court adjudicated the majority of the claims raised herein on the merits. As explained, infra, those claims not adjudicated on their merits are procedurally defaulted and not subject to review by this Court. Thus, this Court may not hold an evidentiary hearing on Petitioner's claims. See Ballinger, 709 F.3d at 561. Moreover, because habeas review is limited to the record that was before the state court that adjudicated Petitioner's claims on the merits, granting discovery so that Petitioner may supplement that record would be futile. See Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. folio § 2254 (requiring a petitioner to demonstrate "good cause" for discovery). Therefore, Petitioner's motions shall be denied.

## B. Substantive Claims

### 1. Sentencing Miscalculation

Petitioner claims that the trial court miscalculated his Prior Record Level ("PRL") at sentencing. (Pet. 3, Doc. No. 1.)[2] Specifically, Petitioner contends that the trial court incorrectly found that he had 16 points for prior convictions, which gave him a PRL V for sentencing. Petitioner asserts that the correct number of points for his prior convictions is 14 and that he should have a PRL IV for sentencing. Petitioner raised this claim in the MAR filed on or about

---

[2] The instant habeas Petition, with exhibits, totaled 213 pages. (Doc. Nos. 1, 1-2, & 1-3.) For ease of reference, the Court uses the page numbers generated by the district court's electronic filing system when citing to documents filed by Petitioner.

April 7, 2014.  (Resp't's Ex. 5, Doc. No. 6-6.)  It was denied on the merits.  (Order Den. MAR, Resp't's Ex. 6, Doc. No. 6-8.)

"The writ of habeas corpus shall not extend to a prisoner unless . . . [he] is in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c)(3).  Thus, "[a] federal court may not issue the writ on the basis of a perceived error of state law."  Pulley v. Harris, 465 U.S. 37, 41 (1984).

A state trial court's assignment of a PRL is a matter of state law.  See State v. Wright, 708 S.E.2d 112, 125 (N.C. Ct. App. 2011).  Claims alleging errors in the application of state sentencing law by the state courts ordinarily do not state any cognizable claim for habeas relief in the federal courts.  See Thomas v. Taylor, 170 F.3d 466, 470 (4th Cir. 1999) (holding that an allegation of sentencing error was a state law claim for which "federal habeas review simply does not lie").  Petitioner would have to show a specific constitutional violation or fundamental unfairness in order to state a cognizable federal claim.  See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991).

In Claim 11 of the instant Petition, Petitioner claims that trial counsel was ineffective for stipulating to the incorrect prior record level at sentencing.  The substance of Claim 11 was raised in Petitioner's April 17, 2014 MAR (Resp't's Ex. 5, supra, at 57-59), and it was denied on the merits (Order Den. MAR, supra.).  The substance of the claim also was raised in Petitioner's successive MAR filed on October 22, 2014.  (Resp't's Ex. 12, Doc. No. 6-14.)  The state court scheduled an evidentiary hearing on the motion.  (Order Den. Mot. to Am. MAR, ¶ 5, Doc. No. 18-1.)  On February 20, 2015, Petitioner, by and through counsel, filed a motion to withdraw the October 22, 2014 MAR.  (Order Den. Mot. to Am. MAR, supra, at ¶ 7.)  The basis for the

motion was that regardless of whether Petitioner had 16 or 14 points for prior convictions, he remained a PRL V for sentencing purposes.  (Order Den. Mot. to Am. MAR, <u>supra</u>.)

Having conceded in state court that he was not prejudiced by counsel's stipulation, Petitioner cannot demonstrate that the state court's earlier rejection of his ineffective assistance of counsel claim was either contrary to or an unreasonable application of clearly established federal law.  <u>See</u> § 2254(d); <u>see</u> <u>also</u>, <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Likewise, Petitioner cannot show that his sentence was fundamentally unfair.  Respondent is entitled to summary judgment on this claim.

### 2.  Fair Trial Claim

Petitioner claims that he was denied the right to a fair trial when one of the jurors slept throughout the trial.  (Pet. 13, Doc. No. 1.)  Petitioner raised this claim in the MAR filed on or about April 7, 2014.  (Resp't's Ex. 5, Doc. No. 6-6.)  It was denied on the merits.  (Order Den. MAR, <u>supra</u>.)

On the third afternoon of trial, a brief bench conference was held, the substance of which the trial court repeated for the record:

> THE COURT:  One bench conference concerned the attentiveness of the jury.  Mr. Butler and I, after we spoke, the only juror that I thought that was having trouble paying attention and in fact staying awake was Number 10 on the front row.
>
> MR. BUTLER: Yes.
>
> THE COURT: And I tried to watch him pretty carefully.  He had moments, but I think he recovered shortly after our bench conference.  Hopefully, my softly worded words of advice before we took a break will get him through.
>
> If I notice we're having issues with that or anyone else for that matter, please call it to my attention.
>
> MR. BUTLER: Yes.

THE COURT: And I'll have to address it in a different way.

(Trial Tr. 582-83, Resp't's Ex. 15, Doc. No. 6-17.)  The "softly worded words of advice" to jurors before they took their afternoon break were as follows:

> I know we're Friday afternoon and it's -- we've had lunch and we're concluding this week's business, but I wanted to emphasize how important it is that you continue to be attentive at all times, and as I indicate to you and as each of you promised both of these attorneys when you were selected as a jury person that you would be attentive to all the evidence and hear all the evidence.  I want to continue to emphasize that even at this late, late juncture.

(Trial Tr. 581-82, supra.)  Petitioner has not pointed to any other evidence that Juror No. 10, or any other juror was sleeping during the trial.

The Sixth Amendment "entitles a criminal defendant to a fair trial, not a perfect one." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).  While Petitioner maintains that the juror was sleeping throughout the trial, the trial judge described the juror as having moments of difficulty staying awake, not as sleeping, and Petitioner has not presented clear and convincing evidence to the contrary.  See § 2254(e)(1).  Furthermore, Petitioner has not presented evidence that this occurred at any time other than the one afternoon it was discussed on the record.

Consequently, Petitioner has not demonstrated that the state court's rejection of this claim was based on an unreasonable determination of the facts in light of the evidence presented.  See § 2254(d)(2).  Nor has he demonstrated that the state court arrived at a conclusion that was contrary to, or unreasonably applied, clearly established federal law when it denied this claim. See § 2254(d)(1).  Therefore, Petitioner is not entitled to habeas relief on his fair trial claim.

### 3.  Hearsay Claim

Petitioner claims that hearsay statements were admitted against him throughout his trial in violation of his right to confront the witnesses against him.  Petitioner raised this claim in the

MAR filed on or about April 7, 2014.  (Resp't's Ex. 5, Doc. No. 6-6.)  It was denied on the

merits.  (Order Den. MAR, <u>supra</u>.)

Notwithstanding his assertion that hearsay statements were admitted against him

throughout his trial, Petitioner provides evidence of only one such alleged incident.  (Pet. 16-20,

Doc. No. 1.)  On direct examination, Officer B. Roldan testified that he filled out the arrest

affidavit and worksheet for Petitioner in the cases at issue here.  (Trial Tr. 700-701, <u>supra</u>.)

Petitioner told Roldan that his name was "Christopher K. Moffett" and provided Roldan a

birthdate and address.  (Trial Tr. 700, 702, <u>supra</u>.)  Roldan testified further that he (Roldan)

subsequently changed the name on the arrest worksheet and affidavit to "Rodney Eugene Jones"

and changed the birthdate and address Petitioner had given him.  (Trial Tr. 702-703, <u>supra</u>.)

Petitioner contends that Roldan's testimony regarding the differing demographic information

was inadmissible hearsay and violated Petitioner's rights under the Confrontation Clause.

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall

enjoy the right . . . to be confronted by the witnesses against him."  <u>Crawford v. Washington</u>, 541

U.S. 36, 42 (2004).  In <u>Crawford</u>, the Supreme Court held that testimonial out-of-court

statements generally are barred from admission at trial by the Confrontation Clause unless the

witness is unavailable, and the defendant had prior opportunity to cross-examine the witness,

regardless of whether such statements are deemed reliable by the court.  541 U.S. 36, 68 (2004),

<u>abrogating</u> <u>Ohio v. Roberts</u>, 448 U.S. 56, 65-66 (1980).  A statement is testimonial if the

"primary purpose" of the conversation was to "creat[e] an out-of-court substitute for trial

testimony."  <u>Michigan v. Bryant</u>, 562 U.S. 344, 369 (2011).

As an initial matter, Roldan's testimony that Petitioner gave him the name "Christopher

K. Moffett," a birthdate, and a home address was not hearsay.  Hearsay is an out-of-court

statement, made by a non-testifying witness, "offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C–1, Rule 801(c) (2009). In this case, Petitioner's statement to Roldan was not offered to prove the truth of the matter asserted – that Petitioner's name is Christopher K. Moffett, etc. Furthermore, admission of statements made by a defendant to a testifying witness does not violate the Confrontation Clause.

To the extent Roldan's testimony that he subsequently changed the demographic information he had received from Petitioner was hearsay and violated Petitioner's Confrontation Clause rights, any error in admitting the testimony was harmless. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (holding that harmless error standard on federal habeas review requires trial error to have "substantial and injurious effect or influence in determining the jury's verdict" to warrant relief). Roldan testified on voir dire that he obtained Petitioner's real name, birthdate, and address from a sheriff's deputy at the Mecklenburg County Jail. (Trial Tr., supra, at 688.) Roldan then used the fact that Petitioner originally gave him false demographic information as the basis for charging Petitioner with resisting a public officer who was attempting to discharge a duty of his office, see N.C. Gen. Stat. § 14-223. (Trial Tr., supra, at 699, 730-31.) Neither of these facts was revealed to the jury, however. Moreover, at the close of the State's evidence, and outside the presence of the jury, the trial court dismissed the charge of resisting a public officer due to a fatal variance in the charging document. (Trial Tr., supra, at 732.) Thus, Petitioner has failed to demonstrate that admission of Roland's testimony that he changed the demographic information on the arrest worksheet and affidavit had a "substantial and injurious effect or influence in determining the jury's verdict." See Brecht, 507 U.S. at 637.

The state court's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. See § 2254(d)(1). Therefore, Respondent is entitled to summary judgment on this claim.

### 4. Jury Selection Claim

Petitioner claims that he was deprived of a fair trial when, during jury selection, the trial court allowed the prosecutor to ask "stake-out" questions about forensic evidence. (Pet., supra, at 23-24.) Petitioner raised this claim in the MAR filed on or about April 7, 2014. (Resp't's Ex. 5, Doc. No. 6-6.) It was denied on the merits. (Order Den. MAR, supra.)

During jury selection, the prosecutor asked potential jurors whether they "would require that the State use a particular type of scientific evidence to prove its case." (Trial Tr., supra, at 72.) Petitioner points out that the only physical evidence that could have tied him to the crimes was the grey hoodie sweatshirt, which was not tested for DNA and which the police department destroyed before trial.

The Sixth and Fourteenth Amendments "guarantee[ ] a defendant on trial . . . the right to an impartial jury." Morgan v. Illinois, 504 U.S. 719, 728 (1992). "[P]art of the guarantee of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors." Id. at 729. Questions by counsel during voir dire should further that purpose. United States v. Fambro, 526 F.3d 836, 848 (5th Cir. 2008) (citing Sandidge v. Salen Offshore Drilling Co., 764 F.2d 252, 258 (5th Cir. 1985)). "[Q]uestion[s] that 'in effect ask[ ] the jury how it would weigh evidence it ha[s] not heard'" are improper because they seek a commitment that may interfere with jurors' ability to fairly consider the evidence. Fambro, 526 at 848 (quoting Sandidge, 764 F.2d at 257.)

In this case, the prosecutor did not ask potential jurors if they would require the State to present DNA evidence to prove its case. Nor did she ask if they would require the State to present <u>some</u> kind of scientific evidence to prove its case. The state court reasonably could have concluded that the prosecutor's question was calculated to identify any potential jurors with a bias in favor of scientific evidence over other types of evidence. Consequently, Petitioner has not demonstrated that the court's rejection of this claim was the result of an unreasonable determination of the facts in light of the evidence. <u>See</u> § 2254(d)(2).

Furthermore, this Court is unaware of any decision by the Supreme Court or any federal appellate court that has granted a § 2254 petition because the state trial court allowed "stake-out" or pre-commitment questions on voir dire in violation of the Sixth Amendment. Therefore, Petitioner has not demonstrated that the state court's rejection of this claim was contrary to or an unreasonable application of clearly established federal law. <u>See</u> § 2254(1).

**5. Improper Argument Claim I**

Petitioner claims that in her closing argument, the prosecutor made remarks implying that Petitioner's decision not to testify was an indication of his guilt. Petitioner raised this claim in the MAR filed on or about April 7, 2014. (Resp't's Ex. 5, Doc. No. 6-6.) It was denied on the merits. (Order Den. MAR, <u>supra</u>.)

The Fifth Amendment command that no person "shall be compelled in any criminal case to be a witness against himself" is applicable against the States through the Fourteenth Amendment. <u>Malloy v. Hogan</u>, 378 U.S. 1 (1964). In <u>Griffin v. California</u>, the Supreme Court held that "the Fifth Amendment . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." 380 U.S. 609, 615 (1965). The test for determining whether an indirect remark constitutes improper comment on a

defendant's failure to testify is whether the language used was "manifestly intended to be" or was "of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify."  United States v. Whitehead, 618 F.2d 523, 527 (4th Cir. 1980), rev'd on other grounds, 452 U.S. 576 (1981).

In her closing argument, the prosecutor stated, in relevant part[3]:

And you heard Mr. Phillips testify **they took off down North Church Street**, and Officer Bell . . . spots this defendant and his accomplice . . . and he **sees them walking hurriedly walking down 7th Street**.  And they get to the alleyway, and they turn in and he watches them.  It takes them about to 20 seconds to get to the end of this road or the end of this alleyway, and then Officer Roldan comes up 6th Street and gets the defendant right over here (indicating).  Right here, almost the corner of 6th and Popular.  So the defendant's entire path of travel, **his entire escape route where he's fleeing from the scene** of where he had just burglarized and stole from Ms. Thompson, he's seen every step of the way.  And at 6th and Poplar, this is where you have the ID.
. . .
Both Tracy and Brandon said the same thing.  That's the guy that broke in her house.  That's the guy that broke into my bedroom, but he's not wearing his sweatshirt anymore.  **He had taken off his sweatshirt as he was running away as he was fleeing right here (indicating) where Tracy found it.**  He had to take his sweatshirt off because Tracy had seen him.  He had to change his appearance. . . . Bell sees them at the corner, watches them come here (indicating).  **They flee down here (indicating) together** and they end up together here (indicating).
. . .
The defendant as he fled he changed his appearance.  He took off his sweatshirt because he had been seen, and you saw pictures of that sweatshirt and in that alleyway, **that alleyway he had been fleeing down.  Officer Bell watched him flee down.**  And you saw the sweatshirt.
. . .
The defendant is -- when he's arrested with his accomplice who has all the victim's property on her that was taken that night gives a fake name.  First, he says his name is Christopher K. Moffett.  His name is actually Rodney Jones.  It's the name he's been referred to throughout the trial.  He gave a fake name.  **He's still trying to hide.  He's still trying to throw everyone off the track who he is**.

---

[3] The Court has italicized and highlighted in bold print the phrases Petitioner contends are unconstitutional comments on his right to remain silent.

> The defendant in this case has been charged with burglary and larceny after burglary. You're about to hear the judge instruct you as to the law in first-degree burglary. There are five elements the State needs to prove to you beyond a reasonable doubt. . . .

(Trial Tr., supra, at 767-72.)

The state court reasonably could have concluded that the prosecutor's language was not "manifestly intended to be" or "of such character that the jury would naturally and necessarily take it to be a comment on the failure of [Petitioner] to testify." Whitehead, 618 F.2d at 527. The defense's theory of the case was that the man and woman who committed the crimes went in separate directions at some point, that the woman was a prostitute who approached and solicited Petitioner, and that because they were together when police arrived a few minutes later, Petitioner was mistaken for the man who had committed the crimes. As is evident from the prosecutor's argument, it was important to the State's case that Petitioner was observed entering Thompson's home and that he was observed by someone almost every step of the way after leaving it. Each of the phrases to which Petitioner takes offense, except the last, was used in the context of presenting a timeline of Petitioner's movements. The prosecutor's repeated use of "fleeing, running away, escaping, etc." could reasonably be viewed as a rhetorical device to reinforce the State's interpretation of the evidence in jurors' minds.

Likewise, the state court reasonably could have concluded the jury would not have "naturally and necessarily" considered the prosecutor's argument that "[h]e's still trying to hide. He's still trying to throw everyone off the track who he is[ ]" to be a comment on Petitioner's failure to testify since it came directly after her reminder that after Petitioner was arrested "[he] gives a fake name. First, he says his name is Christopher K. Moffett. . . . He gave a fake name." (Trial Tr., supra, at 771.) Moreover, the prosecutor's comment fit another theme of her argument

-- that Petitioner changed his appearance after the burglary to hide the fact that he was the one who broke into the victim's home.

Consequently, Petitioner has not demonstrated that the court's rejection of this claim was the result of an unreasonable determination of the facts in light of the evidence. See § 2254(d)(2). Nor has he demonstrated that the state court's rejection of this claim was contrary to, or an unreasonable application of, clearly established federal law. See § 2254(1).

**6. Improper Argument Claim II**

Petitioner claims that the trial court committed prejudicial error when it allowed the prosecutor to argue during opening statements that since the night of the break-in, the victim had to take medication to help her sleep at night. Petitioner asserts that no evidence was presented at trial that Thomspon had to take medication to sleep. Petitioner raised this claim in the MAR filed on or about April 7, 2014. (Resp't's Ex. 5, Doc. No. 6-6.) It was denied on the merits. (Order Den. MAR, supra.)

On direct examination, Thompson testified that the break-in made her feel "[v]iolated. It's been emotionally and mentally draining on me. I'm terrified. I don't sleep at night. I have to take medication. I'm always afraid someone is going to break in." (Trial Tr., supra, at 511.) In light of this testimony, it would not have been unreasonable for the state court to conclude that the prosecutor did not misstate the evidence. Additionally, the trial court instructed the jury that "[a]n opening statement is not evidence and must not be considered by you as evidence. The evidence will come in the form of testimony from the witness stand as well as admissions of any parties and any stipulations or any physical exhibits that are entered into evidence." (Trial Tr., supra, at 393.)

Consequently, Petitioner has not demonstrated that the court's rejection of this claim was the result of an unreasonable determination of the facts in light of the evidence. See § 2254(d)(2). Nor has he demonstrated that the state court's rejection of this claim was contrary to, or an unreasonable application of, clearly established federal law. See § 2254(1); Darden v. Wainwright, 477 U.S. 169, 181 (1986) ("The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'") (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).

**7. Juror Bias Claim**

Petitioner claims that he was denied the right to an impartial jury when the trial court denied counsel's motions to strike a potential juror for cause. Petitioner raised this claim in the MAR filed on or about April 7, 2014. (Resp't's Ex. 5, Doc. No. 6-6.) It was denied on the merits. (Order Den. MAR, supra.)

As noted, a defendant is guaranteed a trial by an impartial jury under the Sixth and Fourteenth Amendments. See, e.g., Morgan, 504 U.S. at 728. The Supreme Court has held that the failure to remove a juror for cause, with the result that the defendant had to use a peremptory challenge to remove the potential juror, does not violate the defendant's right to an impartial jury. United States v. Martinez–Salazar, 528 U.S. 304, 307 (2000). On the other hand, if the trial court's ruling resulted in someone who should have been dismissed for cause being seated on the jury, the resulting conviction must be reversed. Martinez-Salazar, 528 U.S. at 316 (citing Ross v. Oklahoma, 487 U.S. 81, 85 (1988) ("Had [the biased juror] sat on the jury that ultimately sentenced petitioner to death, and had petitioner properly preserved his right to challenge the trial court's failure to remove [the juror] for cause, the sentence would have to be overturned.")).

In this case, counsel did not use a peremptory challenge to remove Davis, the juror at issue. Instead, counsel exercised his last two peremptory challenges on two other potential jurors in Davis's venire, and Davis served on Petitioner's jury. Therefore, Petitioner must demonstrate that Davis should have been dismissed for cause. See Irvin v. Dowd, 366 U.S. 717, 723 (1961) (The defendant claiming that biased jurors were seated on his jury bears the burden of showing prejudice—that is, the "actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.").

The basis of defense counsel's motions to strike Davis was an acknowledgement on Davis's part that he would be inclined to believe the testimony of a police officer. (Trial Tr., supra, at 273.) After defense counsel made a second motion to dismiss Davis for cause, the trial court stated the following:

> I wanted to indicate that I carefully considered arguments of both the State and the defendant. I understand that, as has been indicated here, that everyone comes into this courtroom, jurors, parties, everybody comes in with a certain set of notions about people and how we operate. However, I believe Mr. Davis has indicated to me, and I believe him, that he can treat both sides fairly and put aside -- do his best to put aside those ideas and be a fair and unbiased juror.

(Trial Tr., supra, at 287.) Factual determinations made by the state court are "presumed to be correct," and Petitioner has the burden of rebutting that presumption of correctness by "clear and convincing evidence." § 2254(e)(1).

Here, Petitioner has failed to meet that burden. When asked if he "[felt] like" he would give the testimony of law enforcement personal more deference, Davis responded, "No." (Trial Tr., supra, 271.) He also explained that while he would be inclined to believe police officers because of their training and experience, it would not be "without critical thinking about it." (Trial Tr., supra, 271.) Davis repeatedly responded to questions by the prosecutor, defense

19

counsel, and the trial court that he could be fair and objective, and that he did not think he would be biased in favor of a police officer's testimony. (Trial Tr., supra, 272-73, 274-76, 277-78.) Petitioner has not identified any evidence, other than the voir dire transcript, that Davis was biased against him and should have been struck for cause.

Viewing Davis's complete voir dire and assessing his responses in context, the state court reasonably could have concluded that the trial court's refusal to remove Davis for cause did not result in the seating of a biased juror. See Patton v. Yount, 467 U.S. 1025, 1040 (1984) (holding that "the ambiguity in the testimony of the cited jurors who were challenged for cause [wa]s insufficient to overcome the presumption of correctness owed to the trial court's findings"). Thus, habeas relief is not warranted for this claim.

### 8. In-court Identification Claim

Petitioner claims that Thompson's in-court identification of him as the man she saw in her bedroom on the night of the break-in was uncorroborated and the product of an impermissibly suggestive out-of-court identification procedure. (Pet. 55, Doc. No. 1.) Respondent contends that this claim is procedurally defaulted.

Under the procedural default doctrine, a federal habeas court may review a claim that is procedurally defaulted only upon a showing of cause (e.g. some external factor impeded the petitioner's ability to comply with the State's procedural rule) and prejudice, or that failure to consider the claim will result in a fundamental miscarriage of justice (i.e. the incarceration of someone who is actually innocent). See McCarver v. Lee, 221 F.3d 583, 588 (4th Cir. 2000) (citing Coleman v. Thompson, 501 U .S. 722, 750 (1991)). There are two ways in which a procedural default occurs. The first is when "a habeas petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to

meet the exhaustion requirement would now find the claims procedurally barred." <u>Breard v.</u>
<u>Pruett</u>, 134 F.3d 615, 619 (4th Cir. 1998) (citation and internal quotation marks omitted). In
other words, there is no longer a procedure available to the petitioner to exhaust his claims in the
state courts. Procedural default also occurs "[i]f a state court clearly and expressly bases its
dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule
provides an independent and adequate ground for the dismissal." <u>Id.</u>

Although he raised the substance of this claim on direct appeal, Petitioner did not raise it
in a timely-filed petition for discretionary review ("PDR") to the North Carolina Supreme Court
as authorized by North Carolina Rules of Appellate Procedure 14(b)(2) and (15). To meet the
exhaustion requirement, a petitioner must provide the state courts a full and fair opportunity to
resolve federal constitutional claims before those claims are presented through a habeas petition
in federal court. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999). The habeas petitioner must
raise his claim before every available state court, including those courts-like the Supreme Court
of North Carolina-whose review is discretionary. <u>See id.</u> Because he did not present this claim
to the North Carolina Supreme Court on direct review, it is unexhausted. <u>See id.</u> Additionally,
were he to return to state court and attempt to exhaust this federal constitutional claim, he would
be barred from doing so by North Carolina's procedural bar statute, N.C. Gen. Stat. § 15A-1419.
The claim, therefore, is procedurally defaulted.

This claim also may be procedurally defaulted for a second reason. Although Petitioner
objected at trial to Thompson's in-court identification, he did not do so on constitutional
grounds. <u>See</u> <u>Jones</u>, 2013 WL 5231986 at *2, *5. Consequently, the North Carolina Court of
Appeals reviewed his due process claim for plain error. <u>See id.</u>. Plain error review constitutes

enforcement of the procedural bar for failing to object at trial and precludes federal habeas review.  See Daniels v. Lee, 316 F.3d 477, 487–88 (4th Cir. 2003).

Although Respondent raised exhaustion and procedural default defenses with respect to this claim, Petitioner's Response to the Motion for Summary Judgment (Doc. No. 11) did not assert cause and prejudice to excuse his default or that a fundamental miscarriage of justice would occur if this Court refused to consider this claim on the merits.  ).  See Coleman, 501 U .S. at 750 (1991).  Therefore, for the reasons stated, this claim is procedurally defaulted on federal habeas review, and the Court may not address it on the merits.  See id.

### 9.  Photograph of Grey Hoodie

Petitioner claims that the trial court prejudiced his case by allowing unauthenticated photographs of a balled up piece of clothing to be admitted as evidence that the grey hoodie warn by one of the suspects was found in the alley both suspects had been seen entering.  (Pet., supra, at 74-79.)  Respondent contends that this claim is procedurally defaulted.

This claim is procedurally defaulted on federal habeas review for several reasons.  As an initial matter, at trial and on direct appeal, Petitioner challenged admission of the photographs only on grounds arising under state law.  (Def.-Appellant's Br. 20-33, Doc. No. 6-4.)  As noted, AEDPA requires that before seeking habeas corpus relief, the petitioner first must exhaust his federal constitutional claims in the state courts.  § 2254(b)(1)(A).  Thus, "[t]he exhaustion doctrine bars a [federal constitutional] claim if it is raised for the first time in a federal habeas petition."  Mickens v. Taylor, 240 F.3d 348, 356 (4th Cir. 2001) (en banc).  To the extent that Petitioner raises a federal constitutional claim herein, it is unexhausted in the state courts.  Furthermore, were he to return to state court to attempt to exhaust this federal constitutional claim, he would be barred from doing so by North Carolina's procedural bar statute, § 15A-1419.

To the extent that Petitioner's appellant brief to the North Carolina Court of Appeals can be read as having raised a federal constitutional claim, it is nevertheless procedurally defaulted here. To meet the exhaustion requirement, a habeas petitioner must raise his claim before every available state court, including those courts-like the Supreme Court of North Carolina-whose review is discretionary. See Boerckel, 526 U.S. at 845. Because Petitioner did not present this claim to the North Carolina Supreme Court on direct review, it is unexhausted, and procedurally defaulted. See id.

This claim also may be procedurally defaulted for another reason. Although Petitioner objected at trial to admission of the photographs, he did so on the ground that they were duplicitous, not on the ground that they were unauthenticated. See Jones, 2013 WL 5231986 at *6. Therefore, the North Carolina Court of Appeals reviewed his claim for plain error. See id. Plain error review constitutes enforcement of the procedural bar for failing to object at trial and precludes federal habeas review. See Daniels, 316 F.3d at 487–88.

Although Respondent raised the exhaustion and procedural default defenses with respect to this claim, Petitioner's Response to the Motion for Summary Judgment (Doc. No. 11) did not assert cause and prejudice to excuse his default or that a fundamental miscarriage of justice would occur if the Court refused to consider this claim on the merits. See Coleman, 501 U .S. at 750 (1991). Therefore, for the reasons stated, this claim is procedurally defaulted, and the Court may not review it. See id.

**10. Indictment Claim**

Petitioner claims that the trial court lacked subject matter jurisdiction over his case because the superseding indictment under which he was prosecuted for first-degree burglary and larceny included an alias that was not in the original indictment. Petitioner raised this claim in

the MAR filed on or about April 7, 2014.  (Resp't's Ex. 5, Doc. No. 6-6.)  It was denied on the merits.  (Order Den. MAR, <u>supra</u>.)

Petitioner was indicted by a grand jury on November 10, 2008 for second-degree burglary and larceny after breaking and entering.  (Indictment, Pet., <u>supra</u>, at 82.)  Petitioner was indicted as Rodney Eugene Jones AKA Christopher K. Moffett.  (Indictment, <u>supra</u>.)  On December 8, 2008, the grand jury issued a superseding indictment charging Petitioner with first-degree burglary and larceny after breaking and entering.  (Superseding Indictment, Pet., <u>supra</u>, at 83.)  This time, Petitioner was indicted as Rodney Eugene Jones AKA Christopher K. Moffett AKA Phillip Edward Woods.  (Superseding Indictment, <u>supra</u>.)  Petitioner contends that the addition of the second alias deprived the trial court of subject matter jurisdiction.

Petitioner does not identify the constitutional right at issue.  Indeed, there is no federal constitutional requirement for indictment in a state criminal proceeding.  <u>See</u> <u>Alexander v. Louisiana</u>, 405 U.S. 625, 633 (1973) ("Although the Due Process Clause guarantees petitioner a fair trial, it does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury.").  All that is constitutionally required is that the defendant receive adequate notice of the charges in order to allow him to prepare a defense.  <u>See</u> <u>Russell v. United States</u>, 369 U.S. 749 (1962); <u>Cole v. Arkansas</u>, 333 U.S. 196, 201 (1948); <u>Hartman v. Lee</u>, 283 F.3d 190, 195 n.5 (4th Cir. 2002).  Consequently, "[v]ariances and other deficiencies in state court indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process."  <u>Ashford v. Edwards</u>, 780 F.2d 405, 407 (4th Cir. 1985).

Under North Carolina law, "an indictment is not facially invalid as long as it notifies an accused of the charges against him sufficiently to allow him to prepare an adequate defense and

to protect him from double jeopardy." State v. Haddock, 664 S.E.2d 339, 342 (N.C. Ct. App. 2008). However, an indictment is fatally deficient when it fails on its face to allege "all of the essential elements of the offense." State v. Snyder, 468 S.E.2d 221, 224 (N.C. 1996).

Here, Petitioner does not contend that the superseding indictment failed to allege all of the essential elements of first-degree burglary or larceny after breaking and entering. As such, he has failed to identify any deficiency that rendered his trial "so egregiously unfair as to amount to a deprivation of [his] right to due process." Ashford, 780 F.2d at 407.

To the extent Petitioner is alleging that the trial court lacked subject matter jurisdiction under state law, such a claim is not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) (recognizing that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and that "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States"); Wright v. Angelone, 151 F.3d 151, 157–58 (4th Cir. 1998) (holding the petitioner's claim that state trial court lacked jurisdiction over defective indictments was not cognizable on federal habeas review). For the reasons stated herein, the state court's rejection of this claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, nor was the state court decision based on an unreasonable determination of the facts in light of the evidence presented in state court. See § 2254(d).

### 11. Ineffective Assistance of Counsel Claims

Petitioner raises several claims alleging ineffective assistance of counsel at trial. They are:

    a. Counsel failed to move for a mistrial or motion to excuse Juror Cummings who was sleeping during entire trial.

    b. Counsel failed to strike or excuse Juror Davis, whom he knew to be prejudiced against Petitioner.

      c.   Counsel failed to subpoena S. B. Cain, the officer who collected inconclusive fingerprints from victim's residence.

      d.   Counsel refused to allow Petitioner to testify at trial.

      e.   Counsel stipulated at sentencing to Petitioner having 16 prior criminal record points, when Petitioner only had 14 points.[4]

(Pet., <u>supra</u>, at 86-87.)

"The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 3745 (1986).  In <u>Strickland v. Washington</u>, the Supreme Court identified two necessary components of an ineffective assistance claim.  466 U.S. 668, 687 (1984).  First, "the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>  Second, "the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>

When assessing counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" <u>Id.</u> at 689.  To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the

---

[4] Sub-claim "e" has been addressed in an earlier section of this Order.  <u>See</u> Discussion of Claim I, <u>supra</u>, at 8-9.

result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. It is not enough to show "that the errors had some conceivable effect on the outcome of the proceeding," id. at 693, or that "it is possible a reasonable doubt might have been established if counsel acted differently," Harrington v. Richter, 562 U.S. 86, 111 (2011). Instead, "Strickland asks whether it is 'reasonably likely' the result would have been different," and the "likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111–12.

The state court reasonably could have concluded Petitioner's sub-claim "a," that trial counsel was ineffective for failing to move for a mistrial or to excuse Juror Cummings was without merit. As discussed previously, the trial judge described Juror Cummings as having moments of difficulty staying awake, not as sleeping, and Petitioner has not presented clear and convincing evidence to the contrary. Nor has Petitioner demonstrated that Juror Cummings was sleeping, or even having difficulty staying awake, at any other time during the trial. See Discussion of Claim 2, supra, at 9-10. Consequently, it would not have been unreasonable for the state court to determine that trial counsel performed within the wide range of competent professional assistance and that there was not a reasonable probability of a different outcome at trial had counsel moved for a mistrial or to excuse Juror Cummings. See § 2254(d); Strickland, 466 U.S. at 687.

Likewise, the state court reasonably could have concluded that Petitioner's sub-claim "b," that trial counsel was ineffective for failing to use a peremptory challenge to remove Juror Davis was without merit. As discussed previously, the trial court found that Davis could be fair to both sides and objective when considering all of the evidence presented at trial. Trial counsel had two remaining peremptory challenges, one of which he could have used to excuse Davis.

Counsel chose to dismiss two other potential jurors, however.  <u>See</u> Discussion of Claim 7, <u>supra</u>, at 17-18.

In the absence of proof that Davis was actually biased, <u>Strickland</u> required the state court to defer to counsel's strategic choices as to which venire members to strike with peremptory challenges.  <u>See</u> 466 U.S. at 689.  Therefore, Petitioner has not demonstrated that the state court's rejection of this claim was either contrary to or an unreasonable application of Strickland. <u>See</u> § 2254(d)(1).

Petitioner's sub-claims "c" and "d" are dismissed for failure to comply with Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts, which requires a petitioner to "state specific, particularized facts which entitle him . . . to habeas corpus relief for each ground specified.  These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review."  <u>Adams v. Armontrout</u>, 897 F.2d 332, 334 (8th Cir. 1990); <u>see</u> <u>also</u>, <u>United States v. Meacham</u>, 567 F.3d 1184, 1188 (10th Cir. 2009) (upholding denial of defendant's motion for a new trial based upon unsupported, conclusory assertion that counsel refused to allow defendant to testify); <u>Gross v. Knight</u>, 560 F.3d 668, 672-73 (7th Cir. 2009) (holding that to demonstrate that he was prevented from testifying, a defendant "must produce more than bare, unsubstantiated, thoroughly self-serving and none too plausible statement that his lawyer . . . forbade him to take the stand") (citation and internal quotation marks omitted).

**12. False Imprisonment Claim**

Petitioner claims that he is falsely imprisoned because of the erroneous admission of out-of-court and in-court identifications of him as the person seen breaking into the victim's house and entering her bedroom.  (Pet., <u>supra</u>, at 87-89.)  This claim is essentially the same as that

raised in Claim 8 of the instant Petition.  It is denied for the reasons stated therein.  <u>See</u> Discussion of Claim 8, <u>supra</u>, 20-22.

### 13. Equal Protection Claim

In the Amendment to his habeas Petition, Petitioner claims that under the Equal Protection Clause of the U.S. Constitution, he should benefit from retroactive application of a change in the North Carolina structured sentencing law.  (Doc. No. 2.)  Petitioner raised the substance of this claim in a pro se document filed in the Mecklenburg County Superior Court on January 8, 2014 and titled "Amendment to MAR."  (Order Den. Mot. to Am. MAR ¶9, Doc. No. 18-1.)  The state court held that the claim was procedurally barred because Petitioner was in a position to have raised it on direct appeal or in a previously adjudicated MAR, <u>see</u> N.C. Gen. Stat. § 15A-1419(a)(3).  (Order Den. Mot. to Am. MAR, <u>supra</u>, at ¶10.)

The Fourth Circuit has held that § 15A–1419 (a)(3) is an independent and adequate state procedural rule.  <u>See</u> <u>McCarver</u>, 221 F.3d at 588.  Therefore, this claim is procedurally defaulted on federal habeas review.  <u>See</u> <u>Breard</u>, 134 F.3d at 619 (Procedural default occurs "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal.").  Moreover, Petitioner has failed to argue cause for his failure to comply with the state procedural rule or that failure to consider this claim will result in a fundamental miscarriage of justice.  <u>See</u> <u>Coleman</u>, 501 U.S. at 750.  Therefore, the Court may not consider this claim on federal habeas review.[5]  <u>See</u> <u>id.</u>

---

[5] Because Respondent did not raise exhaustion or procedural default as defenses to this claim, the Court has considered "whether justice requires that [Petitioner] be afforded with notice and a reasonable opportunity to present briefing and argument opposing dismissal."  <u>Yeatts v. Angelone</u>, 166 F.3d 255, 262 (4th Cir. 1999).  In this case, the default is obvious.  Additionally, this Court has not found, and Petitioner does not identify, any clearly established

## IV.     CONCLUSION

Petitioner is not entitled to relief on any of the claims raised herein.  Therefore, his habeas Petition shall be denied.

## V.     ORDER

**IT IS, THEREFORE, ORDERED** that:

1) Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) is **DENIED AND DISMISSED**;

2) Petitioner's motion for evidentiary hearing (Doc. No. 9) and motions for discovery (Doc. Nos. 10, 15) are **DENIED**;

3) Respondent's Motion for Summary Judgment (Doc. No. 5) is **GRANTED**; and

4) Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional

Supreme Court precedent recognizing a federal constitutional right to retroactive application of more lenient state sentencing laws where the state legislature or the state courts have indicated that the laws are only to be applied prospectively.  Cf. Wainwright v. Stone, 414 U.S. 21, 23–24 (1973) (rejecting argument that state supreme court was required to make retroactive its new construction of a Florida criminal statute).

right).

**SO ORDERED.**

Signed: September 21, 2015

Frank D. Whitney
Chief United States District Judge